UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEFFREY R. OBSTARCZYK,

                         Plaintiff,

v.

MICHAEL J. ASTRUE
Commissioner of Social Security,

                         Defendant.
_____

**REPORT AND RECOMMENDATION**

08-CV-0099(A)(M)

This case was referred to me by Hon. Richard J. Arcara to hear and report in accordance with 28 U.S.C. §636(b)(1) [3].[1]  Before me are the parties' cross motions for judgment on the pleading pursuant to Fed R. Civ. P. ("Rule") 12(c) [5 and 10].  For the following reasons, I recommend that defendant's motion be DENIED, and that plaintiff's cross-motion be GRANTED in part and DENIED in part.

**PROCEDURAL BACKGROUND**

Pursuant to 42 U.S.C. §405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") [8].  Plaintiff filed an application for SSI and DIB on February 12, 2005, alleging a disability onset of September 1, 2004 (T13).[2]  The claims were initially denied on May 2, 2005 (T53-56).  A hearing was conducted on both claims before ALJ Timothy M. McGuan on March 13, 2007 (T522-557).  Plaintiff was represented at

---

[1] Bracketed reference are to the CM/ECF docket entries.

[2] References to "T" are to the certified transcript of the administrative record filed by the defendant.

the hearing by Richard G. Abbott, Esq. (T522). On May 31, 2007, ALJ McGuan issued a decision denying plaintiff's claim on the ground that plaintiff had not been under a disability within the meaning of the Social Security Act since September 1, 2004, and because there were a significant number of jobs in the national economy that plaintiff could have performed. (T13-21). ALJ McGuan's determination became the final decision of the Commissioner on December 7, 2004, when the Appeals Council denied plaintiff's request for review (T4-6).

## THE ADMINISTRATIVE RECORD

1. **Medical Evidence**

    A. **Evidence Regarding Plaintiff's Alleged Knee Impairments**

    In July 2001 plaintiff was treated by orthopedic surgeon Leslie Bissom, M.D., for right knee pain (T164). Dr. Bissom's impression was "likely exacerbation of some early degenerative joint disease in the medial aspect of his right knee" (T164). In September 2002, a x-ray of plaintiff's right knee revealed "degenerative change in his medial compartment with spurring of the medial femoral condyle and medial tibial plateau" (T176). On April 8, 2003, a x-ray of plaintiff's left knee was normal and showed no joint effusion, fractures or osseous lesions (T175). In May 2003, plaintiff was diagnosed by Dr. Bissom, as suffering from a left knee anterior crucial ligament ("ACL") tear after a work related injury (T155). Plaintiff underwent reconstructive surgery on his left knee in July 2003 (T161), followed by physical therapy (T170-171).

    In June 2004, plaintiff was diagnosed with a "recurrent horizontal tear along the posterior horn and body of the medial meniscus" of his left knee (T167). Plaintiff underwent left

knee ACL revision, left partial meniscetomy and removal of hardware on September 2, 2004, by Keith C. Stube, M.D (T177-178), followed by physical therapy from September 2004 until March 2005 (T203-251).

In December 2004, Dr. Stube measured plaintiff's range of motion in his left knee as between zero and 140 degrees (T187). By March 1, 2005, Stacey Lenhard, PT, found that plaintiff had "good" range of motion and strength in his left knee, and had "essentially normal gait" while walking on a treadmill (T250-251). Mr. Lenhard recommended that plaintiff discontinue therapy because he had achieved his goals, although he should limit himself from higher level activities due to probable degenerative change in his right knee. Id.

On December 1, 2004, Andrew Tumiel, M.D. examined plaintiff for the New York State and Local Retirement Systems (T184-186). At that time, plaintiff walked with a slight limp on his right side and was able to "squat more than halfway" (T185). Dr. Tumiel diagnosed plaintiff as suffering from a left knee ACL tear and advanced osteoarthritic changes in the medial compartment of the right knee (T186). Dr. Tumiel concluded that plaintiff was permanently disabled due to his knees and would be unable to perform the duties of a firefighter. Id.

B. **Evidence Regarding Plaintiff's Alleged Back/Neck Impairment**s

Plaintiff began treatment for back pain with Michael J. Michotek, M.D., in 2000 (T255). An April 8, 2003 x-ray revealed "mild degenerative spondylosis" in the cervical spine (T174). A November 2003 lumbar spine x-ray showed "moderate narrowing of disc space of the L5-S1" (T173). A March 15, 2005 MRI of plaintiff's lumbar spine revealed a disc bulge at the

L5-S1 level (T354). A March 22, 2005 lumbar x-ray revealed no evidence of a compression fracture but "moderately severe loss of mid to posterior disc height at L5/S1" and "minimal loss posterior disc height from L2 to L4" (T437).

In September 2005, plaintiff began treatment with Eugene J. Gosy, M.D., a pain specialist, for back pain related to a February 24, 2005 car accident, which "severely exacerbated" his chronic low back pain (T324, 350). Dr. Gosy diagnosed plaintiff with myofacial pain syndrome and lumbago, and prescribed Lortab and Baclofen (T413-414). His medications were "well tolerated, without drowsiness or dyspepsia" (T32). Dr. Gosy's treatment notes from December 22, 2005, indicate that plaintiff saw significant improvement in his spasms as a result of massage therapy, that plaintiff's spine had full forward flexion and that he had a normal gait (T320-321). Beginning in 2006 and continuing into 2007, Dr. Gosy administered bilateral lumbar facet blocks to treat plaintiff's low back pain (T323, 326, 330, 335, 344, 348, 324).

By March 2006, Dr. Gosy noted that plaintiff "is by no means pain-free, but he is starting to perform more activities" (T324). Dr. Gosy also noted "no lower extremity weakness". Id. In July 2006 Dr. Gosy reported that plaintiff walked with normal gait (T327). Plaintiff advised him that "the medication with the injections have improved his pain greatly". Id. Plaintiff also had negative straight leg tests (T328). Plaintiff's gait remained normal and straight leg tests were consistently negative through January 2007 (T334, 340, 343, 346).

On September 16, 2006, plaintiff treated at Lancaster Medical (Kenneth Cleary, M.D.) after sustaining injures in a September 13, 2006 car accident (T362). Plaintiff was diagnosed with a thoracic sprain/strain and cervicalgia (T362-363). Examination notes revealed

that plaintiff had no spine tenderness and a full range of motion (T362). A thoracic spine x-ray following the accident showed that plaintiff had "mild levoscoliosis in the lower thoracic spine with minimal degenerative spondylosis" (T375). A cervical spine x-ray showed that plaintiff had a "decrease in cervical lordosis with accompanying minimal levoscoliosis and mild degenerative spondylosis from C3 through C7 levels." Id.

In January 2007, plaintiff returned to Lancaster Medical complaining of bilaterial arm pain, back pain, and neck pain (T358). Plaintiff was diagnosed with a sprain or strain of his thoracic spine and was directed to follow up with Dr. Gosy (T358-359). A January 19, 2007 lumbar MRI revealed disc bulges at the L5-S1 level and "slight foraminal narrowing at the L4-L5 level bilaterally" (T355). A February 1, 2007 cervical MRI revealed "diffuse cervical spondylosis with mild diffuse spinal stenosis," a "tiny central disc herniation" at C2-3, a "posterior tear" at C4-C5, and "moderate bilateral neuroforamend narrowing" at C6-7 (T356).

From October 19, 2005 through January 10, 2007 plaintiff treated with Dr. Mark Grazer, a chiropractor (T421-444).

### C. Evidence Regarding Plaintiff's Alleged Heart Impairment

On December 19, 2006, Joseph Gelormini, M.D. performed a bilateral coronary angiography, left ventriculography and left heart catheterization (T447). On February 28, 2007 plaintiff reported no chest discomfort (T446). Plaintiff was diagnosed with hypertrophic obstructive myopathy and dyslipidemia. Id.

### D. Consultive and Independent Medical Examinations

Mohammad Jaffri, M.D. conducted an orthopedic examination of plaintiff on April 19, 2005 (T305-A). At this time, plaintiff's daily activities included, "cooking 3 to 4 times a day, cleaning 1 to 2 times a week a little at a time, laundry a couple of times a week depending upon the pain, shopping 2 to 3 times a week depending on the pain, child care 4 to 5 times a week" (T306).

Dr. Jaffri observed that plaintiff walked with a limp favoring his right knee, that he had full flexion, no pain in his cervical spine, and full range of motion in his upper extremities (T306). With respect to his thoracic and lumbar spine, plaintiff had forward flexion to 75 degrees while standing but flexion up to only 30 degrees while lying on the exam table due to complaints of pain (T307). Plaintiff's knees were tender, but had full range of motion and crepitation in his right knee. Id. Dr. Jaffri found that plaintiff had "moderate limitations" with lifting, carrying heavy weights and prolonged standing and walking, while he had "mild" limitations with prolonged sitting (T308). Dr. Jaffri recommended that plaintiff avoid activities that involved repeated squatting and bending at his back. Id.

On April 27, 2005, Verna Yu, M.D., a state agency review physician, completed a Physical Residual Functional Capacity Assessment (T310-315). Dr. Yu found that plaintiff was able to stand and/or walk about six hours in an eight hour workday with normal breaks (T311). Additionally, Dr. Yu found that plaintiff could frequently carry or lift 10 pounds and occasionally lift 20 pounds. Id. Dr. Yu noted that plaintiff's symptoms were expected to improve (T313).

On March 17, 2006, plaintiff underwent an independent medical examination (T432-433). At that time plaintiff was "limited by persisting low back pain, without pain in the knees, in usual daily activities. He used a fiberglass orthosis for the right knee for extended ambulation. He avoids bending and sitting, he prefers partly standing and sitting" (T433).

**2.      Administrative Hearing Conducted on March 13, 2007**

**A.      Plaintiff's Testimony**

Plaintiff was married and 40 years old at the time of the hearing (T526, 543). He has three young children (ages 9, 5, and 1) who reside with him (T543).

Plaintiff testified that he stopped working in September 2004 due to knee injuries he sustained while working as a firefighter (T526, 536). He testified that he has been unable to return to work due to pain in his knees and lower back (T527). He also complained of numbness in his foot, arms, hand and toes, and neck pain resulting from the two car accidents (T528, 529, 531). Plaintiff further complained of chest pain over the past few years (T532-534).

The following exchanged occurred concerning plaintiff's need to sit in a recliner:

"Q. During your waking hours . . . do you spend any time lying down or in a reclined position?

A. Recline, recline in a recliner. In a recliner. You this slope, reclined, lying down, same as in bed. I can't lay cause of the arch in my back puts, I feel like it puts pressure on my lower back. For the pressure I can't go to sleep. So I don't like laying flat on my back or laying down as much as, I recline mostly.

Q. On an average day how much time will you spend in a recliner?

A. Oh three, four hours.
. . .

>Q. Generally in the past couple years, . . . how long can you sit before you have to get up or go in a recliner or lie down?
>
>. . .
>
>A. Fifteen, ten, fifteen minutes, ten minutes. It all depends . . .
>
>Q. How about standing?
>
>A. Standing? Same thing. . . ." (T545-546).

Plaintiff testified that he drives three to four times a week, he helps his wife with laundry, occasionally goes grocery shopping, does some of the cooking, mows the lawn using a riding mower, and occasionally picks his father up from a nursing home to take him for a ride (T543-548). He can walk a mile or more on a good day (T546-547).

### B. Vocational Expert Testimony

Jay Steinbrenner, a vocational expert, categorized plaintiff's past job as a firefighter as skilled work requiring very heavy exertion (T549). Mr. Steinbrenner testified that an individual with plaintiff's work limitations would be able to transfer skills from his work as a firefighter to a job as a dispatcher, which is sedentary exertional work (T549-551). Additionally, Mr. Steinbrenner also testified that an individual with plaintiff's work restrictions would be able to work as a mail clerk, which is light exertional work or as a plastic mold machine tender position which is light exertional work (T551).

Mr. Steinbrenner acknowledged that an individual who needed to sit in a recliner three to four hours per day would be precluded from all forms of gainful employment (T555).

### 3. ALJ McGuan's May 31, 2007 Decision

ALJ McGuan found that plaintiff had the following severe impairments; "left ACL tear, right knee osteoarthritis, low back pain, numbness in the right arm and great toe, and hypertrophic obstructive cardiomyopathy" (T15). He found that plaintiff did not have an impairment or combination of impairments that meets or medically equaled the criteria of an impairment (defined in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1, Regulations No. 4). ALJ McGuan concluded that plaintiff had the residual functional capacity.

> "To perform the exertional requirements of light work, which is the ability to lift and carry up to 20 pounds occasionally, stand or walk for at least six hours a day, and occasionally perform postural activities. This capacity is reduced somewhat by the need to alternate at will between sitting and standing. He should avoid jobs requiring driving" (T18).

In reaching this conclusion, ALJ McGuan found that plaintiff's impairments could reasonably be expected to produce his alleged symptoms, but concluded that plaintiff's statements regarding the "intensity, persistence and limiting effects . . ." of his symptoms were not entirely credible (T20). He also found that no physician who treated or examined plaintiff concluded that he was totally disabled and that his residual function capacity opinion was consistent with the objective evidence (Id.).

ALJ McGuan determined that plaintiff lacked the residual function capacity to perform his past relevant work as a firefighter (Id.). However, based on the vocational expert's testimony, he found that plaintiff was capable of making an adjustment to another field of work, and concluded that he was not disabled from September 1, 2004 through the date of his decision (T21, 22).

## ANALYSIS

**1.     Scope of Judicial Review**

The Social Security Act states that, upon review of the Commissioner's decision by the district court, "the findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. §405(g). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

Under this standard, the scope of judicial review of the Commissioner's decision is limited. This Court may not try the case *de novo,* nor substitute its findings for those of the Commissioner. See Townley v. Heckler, 748 F. 2d 109, 112 (2d Cir. 1984). Rather, the Commissioner's decision is only set aside when it is based on legal error or is not supported by substantial evidence in the record as a whole. See Balsamo v. Chater, 142 F. 3d 75, 79 (2d Cir. 1998). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the Court's independent analysis of the evidence may differ" from that of the Commissioner. Martin v. Shalala, 1995 WL 222059, *5 (W.D.N.Y. 1995) (Skretny, J.).

However, before deciding whether the Commissioner's determination is supported by substantial evidence, the court must first determine "whether the Commissioner applied the correct legal standard". Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). "Failure to apply the correct legal standards is grounds for reversal." Townley, supra, 748 F. 2d at 112.

**2. The Disability Standard**

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §1382c(a)(3)(B).

The determination of disability entails a five-step sequential evaluation process:

"1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a 'severe impairment,' the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The

> Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps."

Shaw v. Chater, 221 F. 3d 126, 132 (2d Cir. 2000). *See* 20 C.F.R. §§404.1520, 416.920.

**3.     Analysis**

   **A.     ALJ McGuan Improperly Assessed Plaintiff's Credibility.**

Plaintiff argues that ALJ McGuan failed to properly evaluate his complaints of pain because he failed to make a finding whether plaintiff's statements about his symptoms were substantiated by objective medical evidence. Plaintiff's Memorandum of Law [8], Point 1. He also argues that ALJ McGuan improperly found him not to be entirely credible without any explanation to substantiate his conclusion. Id. In response, defendant contends that the objective medical evidence did not substantiate plaintiff's allegations of pain. Defendant's Reply Memorandum of Law [12], pp. 2-6.

"The Commissioner has established a two-step process to evaluate a claimant's testimony regarding her symptoms, including pain. 'First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about [her] symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.'" Hogan v. Astrue, 491 F.Supp.2d 347, 352 (W.D.N.Y. 2007) (Larimer, J.).

"In assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's

testimony." Matejka v. Barnhart, 386 F.Supp.2d 198, 205-206 (W.D.N.Y. 2005) (Siragusa, J.). In addition to the objective medical evidence, the ALJ is required to consider: "(1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." Id.; *see* SSR 96-7p, 1996 WL 374186, *4 (July 2, 1996) ("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement . . .").

Contrary to plaintiff's contention, ALJ McGuan did make findings that his alleged symptoms were not substantiated by objective medical evidence. For example, he stated that "objectively, there was no evidence of significant pain and the lumbar range of motion was normal, despite the claimant's July 2006 allegations of not being able to sit or stand for prolonged periods" (T17).

Because ALJ McGuan found that plaintiff's statements about his symptoms were not substantiated by objective medical evidence, he was required to make a finding as to plaintiff's credibility and give specific reasons for the weight accorded to the claimant's testimony. However, he failed to do so.

ALJ McGuan's decision specifically indicates the factors that he should have considered in making his credibility determination (T19). Despite this, he failed to discuss his findings with respect to these factors. Instead, ALJ McGuan stated merely that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (T20). This generalized conclusion fails to satisfy the requirements of SSR 96-7P: "The determination or decision on credibility . . . must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." 1996 WL 374186, *2.

Significantly, ALJ McGuan failed to specifically address the credibility of plaintiff's testimony that he has to sit in his recliner for three to four hours a day (T546). In discussing Vocational Expert Steinbrenner's testimony, ALJ McGuan stated: "If a person had to recline daily, he could not do any of the jobs listed or any other job (it is noted that this all pertains mainly to the claimant's complaint's of back pain that did not start until after the February 2005 accident)" (T21). However, ALJ McGuan did not include any specific discussion of whether plaintiff's complaints of low back pain were credible. Plaintiff's credibility in this regard is critical in determining his capacity for employment, because Vocational Expert Steinbrenner admitted that plaintiff would be precluded from performing all forms of gainful employment if his low back pain required him to sit in a recliner for 3 to 4 hours per day (T555).

"Symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." SSR 96-7P, 1996 WL 374186, *1. Accordingly, plaintiff "need not show that [his] impairment could reasonably be expected to

-14-

cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused *some degree* of the symptom." Smolen v. Chater, 80 F. 3d 1273, 1282 (9th Cir. 1996) (emphasis added).

Because ALJ McGuan failed to properly evaluate plaintiff's credibility, I recommend that this case be remanded for reconsideration and clarification by the ALJ. "Remand is particularly appropriate where, as here, we are 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.' " Pratts v. Chater, 94 F. 3d 34, 39 (2d Cir. 1996). *See* Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) ("cases may arise . . . in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ. In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision.").

**B.     ALJ McGuan Properly Considered Plaintiff's Impairments.**

Plaintiff argues that he is entitled to judgment because ALJ McGuan failed to support his determination by substantial evidence, namely, that he failed to consider plaintiff's impairments in combination. Plaintiff's Memorandum of Law [8], pp. 11-12. In response, the Commissioner argues that ALJ McGuan properly evaluated all of plaintiff's impairments and found him capable of performing a range of light work. Defendant's Reply Memorandum of Law [12], pp. 6-10.

"It is well-settled that the combined effect of all plaintiff's impairments must be considered in determining disability. The ALJ must evaluate the combined effect of plaintiff's impairments on her ability to work, 'regardless of whether every impairment is severe.' According to the Social Security Rulings, an assessment of residual functional capacity (RFC) takes into account functional limitations and restrictions resulting from the individual's medically determinable impairment or combination of impairments, whether or not all of those impairments are 'severe.'" Zedanovich v. Commissioner of Social Security, 2009 WL 577763, *8 (N.D.N.Y. 2009).

Plaintiff argues that ALJ McGuan "made no mention of the fact that [he] has a neck problem". Plaintiff's Memorandum of Law [8], p. 9. There is no support for this argument. In reaching his determination that plaintiff had the capacity to perform light work, ALJ McGuan relied on the "entire record" (T18). ALJ McGuan specifically noted that plaintiff had a "tiny" herniation, a posterior tear, and moderal bilateral neural foramen narrowing in the cervical spine (T17). However, Dr. Jaffe found plaintiff to have full range of motion in his cervical spine and "no cervical or paracervical pain or spasm" (T306). In addition to the lack of evidence that plaintiff's cervical spine condition limited his function in any respect, plaintiff himself testified that only his low back and knee pain rendered him unable to work (T527).

Plaintiff also appears to argue that ALJ McGuan failed to take his excellent work history as a firefighter into consideration. Plaintiff's Memorandum of Law [8], p. 9. To the extent that plaintiff's prior work history was relevant, ALJ McGuan noted his work as a firefighter (T20).

While it is arguable that ALJ McGuan could have more specifically detailed his findings, he "was not required to mention or discuss every single piece of evidence in the record. . . . Where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.' . . . Moreover, '[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered.'" Barringer v. Commissioner of Social Security, 358 F.Supp.2d 67, 78-79 (N.D.N.Y. 2005).

**CONCLUSION**

For these reasons, I recommend that the Commissioner's motion for judgment on the pleadings [5] be DENIED and plaintiff's cross-motion for judgment on the pleadings [10] be GRANTED in part and denied in part, and that the case be remanded to the Commissioner for further proceedings consistent with this Report and Recommendation. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Rule 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate

-17-

judge in the first instance.  *See, e.g.*, Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED: October 8, 2009

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
